**FORD MOTOR COMPANY, Appellant,**

v.

**Robert and Glenda CAMMACK, Individually and as Natural Heirs of The Estate Of Jennifer Cammack, Appellees.**

No. 14–95–01505–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 3, 1998.

Opinion Denying Rehearing
July 15, 1999.

2

Craig A. Morgan, Austin, for appellant.

Michael Kerensky, A. Glenn Diddel, III, Christopher Tramonte, Houston, for appellee.

Before MURPHY, C.J., and O' NEILL and SEARS,*JJ.

## OPINION

MURPHY, Chief Justice.

Robert and Glenda Cammack ("the Cammacks") brought this wrongful death and survival action against Ford Motor Company ("Ford"). The Cammacks claimed that Ford's negligence and the defective design of Ford's Bronco II caused the death of their twenty-one year-old daughter, Jennifer. The case was tried to a jury, which found in favor of the Cammacks on both claims and awarded $25 million in actual and punitive damages. In accordance with law, the trial court reduced the damage award to $5.5 million and entered judgment in favor of the Cammacks based on the jury's verdict. Ford appeals and raises seven points of error asserting: (1) the Cammacks lacked standing to bring their survival claim, (2) the survival claim is barred by limitations, (3) there is insufficient evidence to support causation, and (4) there is charge error with respect to punitive damages. Because the Cammacks failed to establish standing to bring their survival action within the limitations period, we modify the judgment and affirm as modified.

## I. BACKGROUND

On May 14, 1992, Jennifer Cammack and six others were riding in a 1987 Ford Bronco II. As the vehicle traveled down a two-lane highway outside Schulenburg, the right rear tire blew out and the vehicle slid sideways and rolled over several times. Jennifer was sitting in the middle of the rear bench seat between two other people and was not wearing a seat belt. As a result of the accident, Jennifer suffered fatal injuries. The Cammacks, "Individu-

---

* Senior Justice Ross A. Sears sitting by assign- ment.

ally and as Natural Heirs of Estate of Jennifer Cammack," sued Ford, Max Mahaffey Ford, Inc., the dealer who sold the vehicle, and General Tire, Inc., the manufacturer of the tire. The Cammacks asserted causes of action for strict products liability, negligence, misrepresentation and breach of warranty. The Cammacks settled with the tire manufacturer and the driver, Robert Ross, before trial and nonsuited the dealer during trial. The case was submitted to the jury on negligence and strict products liability. The jury found in favor of the Cammacks on both claims and found that Ford was the sole cause of Jennifer Cammack's death. The jury also found Ford grossly negligent. The jury awarded actual damages of $750,-000.00 to each of the Cammacks, individually, and $1,000,000.00 to Jennifer's estate. After a separate trial on punitive damages, the jury awarded Jennifer's estate $22,-500,000.00, but found Ford did not act with malice.

After denying Ford's post-verdict motions, the trial court signed an amended final judgment on the verdict in favor of the Cammacks. In the judgment, the trial court applied the dollar-for-dollar credit elected by Ford and awarded $630,600.00 to each of the Cammacks, individually, and $243,800.00 to Jennifer's estate, plus pre- and post-judgment interest. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.012(b)(1) (Vernon 1997). Applying the statutory cap, the trial court also awarded Jennifer's estate $4 million in punitive damages. *See id.* at § 41.007, *amended by* Act of September 1, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen Laws 108, 111 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b) (Vernon 1997)). Ford then perfected this appeal.

## II. STANDING

■ In its first point of error, Ford contends the Cammacks failed to establish standing under the survival statute. At common law, an individual's action for personal injuries did not survive his death.

*Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex.1992). The Legislature abrogated this rule when it enacted section 71.021 of the Texas Civil Practice and Remedies Code. *Id.* Section 71.021 in pertinent part provides that "a cause of action for personal injury to the health, reputation or person of an injured person does not abate because of the death of the injured person ..." and that such an action "survives to and in favor of the heirs, legal representatives, and estate of a injured person." TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986). Generally, the personal representatives of the decedent's estate are the only people entitled to recover estate property. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex.1998). Circumstances exist, however, when an heir may have standing to bring suit on behalf of the decedent's estate. *Shepherd*, 962 S.W.2d at 31. Heirs at law can maintain a survival suit during the four year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and that none is necessary. *Id.*

■ The Cammacks do not dispute this is the rule but characterize the issue as one of "capacity" and claim that Ford waived the issue by failing to timely file a verified plea in abatement in the trial court. In particular, the Cammacks point out that their initial pleadings allege "all conditions precedent" to filing suit had been met and sought damages on behalf of Jennifer's estate. In addition, their amended petition filed immediately before trial alleges they were Jennifer's "natural heirs, " and entitled to damages "under the survivor laws." Because Ford directed discovery to Jennifer's estate and did not specially except to the Cammacks' initial pleadings, the Cammacks contend Ford waived the right to complain about the Cammacks' right to bring a survival action. We disagree. Because Ford's complaint is jurisdictional, we hold that Ford did not waive error. The Texas Supreme Court in *Shepherd* has recently stated that the

right of an heir to bring a survival action is a standing issue. *Id.;*[1] *see Stewart v. Hardie,* 978 S.W.2d 203 (Tex.App.—Fort Worth 1998) (treating the right of an heir to bring a survival action as a standing issue even though raised as "capacity" below). In other words, only heirs or personal representatives have a justiciable interest in recovering estate property. *See El T Mexican Restaurants, Inc. v. Bacon,* 921 S.W.2d 247, 249–53 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (defining standing as a party's justiciable interest in the suit and holding that sole shareholder lacked standing to recover individually on claim belonging solely to corporation). Because standing is implicit in the concept of subject matter jurisdiction, it is never presumed and cannot be waived. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993). Thus, regardless of how Ford characterized its challenge below, it may raise the standing issue on appeal. *See Stewart,* 978 S.W.2d at 206–07.[2]

In the instant case, Jennifer died on May 14, 1992. The Cammacks filed suit on June 23, 1993, and the case was called to trial on June 5, 1995, within the four-year period for instituting an administration proceeding. At trial, Robert Cammack testified he had not obtained a decla-

ration of heirship in the probate court and there had not been any administration of Jennifer's estate. This testimony is insufficient to confer standing on the Cammacks under the survival statute. The Cammacks did not offer any proof that Jennifer died intestate, or if she died testate, that they were the legal representatives of Jennifer's estate. *See* TEX. PROB. CODE ANN. §§ 77, 78 (Vernon 1980). Assuming that Jennifer died intestate, the Cammacks did not offer any proof that they were her rightful heirs or that there were no estate debts, thus, dispensing with the need for an administration. *See* TEX. PROB.CODE ANN. §§ 3(*o*), 38, 45, 178(b) (Vernon 1980 & Supp.1997); *see also Shepherd,* 962 S.W.2d at 31. Absent any such proof, the Cammacks did not establish standing to bring a survival action on behalf of Jennifer's estate and thus, the trial court lacked jurisdiction over the subject matter of Jennifer's estate. We therefore sustain Ford's first point of error. Having determined the Cammacks did not establish standing to maintain their survival claim, we also conclude that claim is now barred by limitations.

## III. LIMITATIONS

 In its second point of error, Ford contends limitations barred the Cam-

---

1. This pronouncement is consistent with the court's longstanding precedent that the pleading and proof requirement for recovery of estate property is jurisdictional. *See Frazier v. Wynn,* 472 S.W.2d 750, 752–53 (Tex.1971) (failure of heir to show that administration was pending barred recovery for breach of lease originally held by decedent); *White v. White,* 142 Tex. 499, 179 S.W.2d 503, 506 (1944) (failure of heirs in first partition suit to prove necessary jurisdictional facts regarding necessity of estate administration barred collateral attack on partition judgment in second partition suit); *Youngs v. Youngs,* 26 S.W.2d 191, 193–94 (Tex. Com. App.1930, judgm't adopted) (failure of heirs to plead and prove there was no administration necessary and none pending barred recovery of property previously conveyed by decedent); *Richardson v. Vaughan,* 86 Tex. 93, 23 S.W. 640, 641 (1893) (failure of heirs to plead and prove there was no administration necessary and

none pending barred recovery of debts owed to estate).

2. In the trial court, Ford treated the issue as one of "capacity." After the Cammacks amended their petition before trial, Ford promptly filed a verified denial challenging the Cammacks' capacity to bring suit under the survival statute. At the same time, Ford filed a motion to show authority requesting the Cammacks to demonstrate their authority to bring suit on behalf of Jennifer's estate. Ford also filed a motion for partial summary judgment and request for an expedited ruling on the capacity issue. The trial court did not rule on Ford's motion to show authority and overruled Ford's summary judgment motion as untimely. In any event, it was the Cammacks' burden to establish their standing under the survival statute. *See Stewart,* 978 S.W.2d at 207.

macks' survival claim because the proper party did not assert that claim within the applicable limitations period. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(b) (Vernon 1986). Ford points out that the Cammacks did not allege they were the heirs of Jennifer's estate or seek damages under the "survivor laws" until their pleadings were amended before trial in June 1995. The Cammacks respond that their initial pleadings timely gave Ford fair and adequate notice of their survival claim. *See e.g., SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354 (Tex.1995). We need not decide whether the Cammacks' pretrial allegations relate back to their initial pleadings because they never pled within the limitations period, that they were the proper party to assert them.

In *Stewart v. Hardie,* Stewart brought a wrongful death and survival action against the defendant *doctor* for alleged medical malpractice that resulted in the death of Stewart's wife. *Stewart,* 978 S.W.2d at 206. The doctor filed a verified denial, asserting the survival action was barred by limitations because "no individual, including Stewart, ... appeared ... with the capacity to assert the survival claim during the requisite time period." *Id.* The trial court dismissed the survival claim and the court of appeals affirmed, concluding that Stewart never alleged the facts necessary for him to represent the estate as an heir and never attempted to join the proper estate representative within the limitations period. *Id.* at 207. Because Stewart did not plead or prove the necessary jurisdictional facts or attempt to join the proper party, even after the doctor filed a verified denial challenging Stewart's capacity, the court concluded that Stewart could not

amend his pleadings to bring his claim within the statute. *Id.* Likewise, in this case, Ford filed a verified denial challenging the Cammacks' capacity. Despite that challenge, the Cammacks never pled or proved the jurisdictional facts necessary for them to represent the estate as heirs and never attempted to join the proper estate representative as a party. Therefore, we hold the Cammacks' survival claim is now barred by limitations. *See id.* Accordingly, we sustain Ford's second point of error.

## IV. CAUSATION

In points of error three through five, Ford attacks the legal and factual sufficiency of the evidence in support of the jury's findings that the defective design of the Bronco II and Ford's negligence were the sole cause of Jennifer's death. The jury found that among Ford, the tire manufacturer, the driver and Jennifer Cammack, Ford was "100% the proximate or producing cause of the occurrence or injury resulting in Jennifer Cammack's death."

The case was submitted to the jury on causes of action of negligence and strict products liability. Each of these claims were based on distinct and independent theories of liability. One theory is that the Bronco II had a propensity to roll over and the other is that the Bronco II did not have a third seat belt in the middle of the rear bench seat where Jennifer was sitting at the time of the accident. In other words, the Cammacks asserted that Ford was negligent and the Bronco II was defectively designed because the vehicle had a propensity to roll over and because it did not have a third seat belt. Ford does not, however, challenge the evidence supporting these liability theories.[3] Instead, Ford

---

**3.** The Cammacks put on evidence that the Bronco II was abnormally prone to roll over in either normal or emergency driving conditions because of its low stability index and the "jacking" tendency of its twin-I beam suspension. The stability index is measured by the track width divided by the center of gravity height and is an important factor, though not the only factor, in determining rollover pro-

pensity. "Jacking" is a phenomenon that occurs during cornering and raises the vehicle's center of gravity and decreases handling and stability. Ford does not, however, raise points of error or argument challenging the jury's findings of negligence and defective design based on the low stability index and jacking propensity. Nor does Ford raise points of error or argument challenging jury's

argues there is no evidence or insufficient evidence, that the Bronco II's defective design or Ford's negligence was the cause in fact or the sole cause of Jennifer's death. The Cammacks respond there is circumstantial evidence from which reasonable minds could draw the inference that Ford's negligence or its defective design of the Bronco II was the sole cause in fact of Jennifer's death.

## A. Standard Of Review

 Negligence requires a showing of proximate cause, while producing cause is the test in strict products liability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). Proximate and producing cause differ in that foreseeability is an element of proximate cause but not producing cause. *Id.* Proximate cause consists of both cause in fact and foreseeability. *Id.* Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. *Id.* A producing cause is an efficient, exciting, or contributing cause, which in a natural sequence, produced the injuries or damages complained of, if any. *Id.* Thus, common to both proximate and producing cause is causation in fact, including the requirement that the defendant's conduct or product be a substantial factor in bringing about the plaintiff's injuries. *Id.* At some point in the causal chain, however, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation. *Id.* Legal cause is not established if the defendant's conduct or product does no more than furnish condition that the makes the plaintiff's injury possible. *Id.*

When, as here, both legal and factual sufficiency points are raised, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the jury's findings. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401

(Tex.1981); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). That review requires us to consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). Only where the evidence offered to prove a vital fact is so weak as to do no more than create mere surmise or suspicion of its existence is the evidence nothing more than "a scintilla" and, in legal effect, no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). If the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in support of, and contrary to, the challenged findings. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We must uphold the jury's findings unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

 As with any ultimate fact, circumstantial evidence and inferences therefrom are a sufficient basis for a finding of causation. *Russell v. Russell*, 865 S.W.2d 929 (Tex.1993); *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992). The issue is whether there is any evidence from which reasonable minds could draw an inference that the defendant's conduct was a cause in fact of the plaintiff's injuries. *Havner*, 825 S.W.2d at 459. If the circumstances are consistent with either of two facts, however, and nothing shows that one is more probable than the other, then neither fact can be inferred. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex.1995). Neither the verdict nor the judgment reflect whether liability is premised on the Bronco

findings negligence and defective design based on the failure to provide a third seat

belt in the middle of the rear bench seat.

II's alleged propensity to roll over or the failure to provide a third seat belt. Because either of these theories of liability independently supports the verdict and judgment, Ford attacks causation with respect to both theories. We address the seat belt issue first.

## B. Failure To Provide A Third Seat Belt

Ford contends there is no evidence that its failure to provide a third seat belt in the middle of the rear bench seat was the cause in fact of Jennifer's death. Ford argues there is no evidence that Jennifer would have used a seat belt even if Ford had provided a third seat belt. Ford also argues that even if Jennifer had used a seat belt, there is no evidence that it would have made any difference. Ford is incorrect on both counts. First, there is evidence to support the conclusion that Jennifer would likely have used a third seat belt if Ford had provided one. Robert Cammack testified that he always used seat belts and instilled that habit in his children. He also testified that his children always wore their seat belts when he rode with them in the car. Glenda Cammack testified it was the family rule to always wear seat belts. She also testified that Jennifer always wore a seat belt when she and Jennifer rode together. Finally, Jennifer's sister, Shannon, testified that she and Jennifer had a habit of always wearing seat belts. Based on this "habit" evidence, the jury could reasonably have concluded that Jennifer would have used a seat belt if Ford had provided one in the middle of the rear bench seat.

Ford contends this evidence is not enough because there is no evidence Jennifer requested a seat belt. This contention ignores the obvious fact that another vehicle occupant would have had to sit in the middle of the rear bench seat without a seat belt. More importantly, it ignores evidence that Ford knew three people would likely sit in the rear bench seat as designed.[4] Here, the jury could reasonably have concluded that Jennifer did not request a seat belt because Ford did not provide one.

As for Ford's second argument, there is undisputed evidence that a third seat belt in the middle of the rear bench seat would have made a difference. Ford's safety engineer, Ed Paddock, testified, without objection, that Jennifer was ejected from the vehicle. In addition, a photograph taken at the time of the accident, plaintiffs' exhibit 200, shows emergency personnel standing over Jennifer as she lay on the ground beside the overturned vehicle.[5] Further, there is undisputed expert testimony that ejection is the most common cause of fatality in vehicle rollovers and that seat belts afford the greatest protection against ejection. There is also undisputed expert testimony that seat belts substantially reduce the risk of serious injury and death and that Jennifer might not have died if she had worn a seat belt. Based on the above circumstantial evidence, we hold that the jury could reasonably have concluded that Ford's failure to provide a third seat belt was a cause of Jennifer's death. Because we find legally and factually sufficient evidence to support the jury's finding of causation based on the failure to provide a third seat belt, we need not address causation as it relates to the

---

**4.** Although Ford does not contest the jury's findings of negligence and defective design in connection with the failure to provide a third seat belt in the rear bench seat, we note this issue was hotly contested at trial. Ford put on evidence that the length and configuration of the Bronco II's rear bench did not mandate a third seat belt under federal regulations. The Cammacks, on the other hand, offered evidence that the rear bench seat could accommodate three people consistent with fed-

eral regulations and that Ford knew, and even advertised, this fact.

**5.** Although the person's head is obscured by some bushes, the photograph clearly shows the body of a female laying on the ground. According to the testimony, the only other female passenger, Andrea Stroh, walked away from the accident.

Bronco II's propensity to roll over. *See George Grubbs Enterprises, Inc. v. Bien,* 881 S.W.2d 843, 851 n. 7 (Tex.App.Fort Worth 1994), *rev'd on other grounds,* 900 S.W.2d 337 (Tex.1995) (where the judgment rests on multiple theories of recovery and one theory is valid, an appellate court need not address the other theories).

### C. Comparative Responsibility

■ Having determined that the evidence is sufficient to support the jury's finding of causation, we must now decide the sufficiency of the evidence to support the jury's determination that Ford's conduct was the sole cause of Jennifer's death. Ford contends the jury's finding that Ford was the sole cause of Jennifer's death is against the great weight and preponderance of the evidence because there is evidence of several contributing causes, including: (1) the driver's failure to control his speed and his overreaction in hitting the brakes and turning the steering wheel to the left instead of holding it straight; (2) the blowout of the defective right rear tire; and (3) the overloading of the vehicle.[6] While there is evidence to support these factors as contributing causes of the accident, there is equally conflicting evidence that rules out each of these factors, except the defective right rear tire. Nevertheless, given the testimony of the effectiveness of wearing seat belts, the jury could reasonably have concluded that in spite of these other factors, Jennifer would not have died if Ford had provided a third seat belt. Therefore, we conclude there is factually sufficient evidence for the jury to find that Ford was the sole cause of Jennifer's death.

### V. GROSS NEGLIGENCE

■ In its sixth and seventh points of error, Ford contends the evidence does not support a finding of gross negligence under *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994) and that the trial

court erred in failing to define gross negligence to the jury based on *Moriel.* Because the Cammacks did not establish standing to bring their survival action claim, they are left only with their wrongful death action. Parents cannot recover punitive damages under the wrongful death statute. *General Chemical Corp. v. De La Lastra,* 852 S.W.2d 916, 923–24 (Tex.), *cert dism'd,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993). Because the Cammacks cannot recover punitive damages on their wrongful death claim, we need not address Ford's points of error relating to punitive damages.

Accordingly, we reverse the portion of the judgment awarding the Cammacks actual and punitive damages based on their survival claim and render judgment that the Cammacks take nothing on that claim. The remainder of the judgment is affirmed.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

■ On motion for rehearing, the Cammacks contend they established their right to recover on their survival claim under Texas Rule of Civil Procedure 54. The law firm of Edwards, Perry & Hass, L.L.P. has filed an amicus curie brief contending this court failed to apply the correct standard of review and misinterpreted *Shepherd v. Ledford,* 962 S.W.2d 28 (Tex. 1998). We will address the Cammacks' contention first.

Rule 54 provides as follows:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or occurred. When such performances or occurrences have been so plead, the party so pleading same shall be requested to prove only such of them as are specifically denied by the opposite party.

---

6. Ford also contends that Jennifer's failure to wear a seat belt was a contributing cause of her death. As we discussed, the jury could reasonably have concluded that Jennifer did not wear a seat belt because Ford failed to provide one.

In their pleadings, the Cammacks alleged "all conditions precedent to filing this Petition have been met." Claiming that Ford failed to specifically deny that allegation, the Cammacks contend they established their right to recover on their survival action as a matter of law. In support of this contention, the Cammacks cite *Greathouse v. Charter Nat'l Bank–Southwest*, 851 S.W.2d 173 (Tex.1992), *Miller v. University Sav. Assoc.*, 858 S.W.2d 33 (Tex.App.—Houston [14 th Dist.] 1992 writ denied), and *City of Houston v. Flanagan*, 446 S.W.2d 348 (Tex. App.—Houston [1 st Dist.] 1969 writ ref'd n.r.e.). While applying Rule 54, these cases are not "standing" cases. *See e.g., Greathouse*, 851 S.W.2d at 176–77 (holding that creditor was not required to prove sale of collateral was commercially reasonable in suit to recovery deficiency where guarantor did not specifically deny creditor's pleading that "all conditions precedent have been performed or occurred"); *Miller*, 858 S.W.2d at 36 (noting that guarantor could not raise lack of notice to accelerate in suit to recover on note where guarantor failed to specifically deny holder's pleading "that all conditions precedent have been performed or have occurred"); *Flanagan*, 446 S.W.2d at 350 (holding that plaintiff was not required to prove notice of injury where city failed to specifically deny allegation of notice).

 As discussed in our opinion, the right of an heir to bring a survival action is a standing issue. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex.1998). Standing is a component of subject matter jurisdiction that cannot be waived. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). Without jurisdiction, a court's actions are void. *See State ex rel Latty v. Owens*, 907 S.W.2d 484, 485 (Tex.1995). Given the fundamental nature of jurisdiction, it is not surprising the Cammacks have cited no authority for the proposition that standing may be established as a matter of law merely by pleading "conditions precedent

have been performed or occurred" under Rule 54. In the absence of such authority, we decline to so hold. Even if we were to apply Rule 54 to this case, Ford put the Cammacks to their proof on the standing issue by filing a verified denial and motion to show authority that challenged the Cammacks' right to bring suit under the survival statute. As we observed in our opinion, the Cammacks failed to satisfy their burden of proof.

 The amicus contends otherwise by pointing to the evidence that there had not been an administration of Jennifer's estate. When standing is reviewed for the first time on appeal, the appellate court "must construe the pleadings in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *See Texas Ass'n*, 852 S.W.2d at 446. As stated in our opinion, heirs at law may maintain a survival suit within the period allowed by law for administration of an estate, if they allege and prove there is no administration pending and none is necessary. *See Shepherd*, 926 S.W.2d at 413; *see also Stewart v. Hardie*, 978 S.W.2d 203, 207 (Tex.App.—Fort Worth 1998, pet. denied). The Cammacks' pleadings allege they were Jennifer's "natural heirs" and entitled to damages "under the survivor laws." Although they presented evidence that there had not been an administration of Jennifer's estate, this evidence shows only that no administration was pending. It does not prove the Cammacks were the rightful heirs to Jennifer's estate or no administration of that estate was necessary. Because no administration was pending and because there was "no evidence" of outstanding estate debts, the amicus argues the Cammacks were not required to negate the necessity of an administration. *See e.g., City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 564 (Tex.App.-San Antonio 1993, ) (opinion on motion for rehearing). We disagree. The burden was on the Cammacks to plead and prove the estate owed no debts and thus, no need for an administration. *See Stew-

*art,* 978 S.W.2d at 207. The Cammacks presented no evidence whatsoever on this issue. Thus, viewing the pleadings and evidence in support of standing does not change our conclusion that the Cammacks failed to establish standing to bring their survival action.

Noting there are exceptions to the rule,[1] the law firm contends the standing rule recognized in *Shepherd* does not apply to survival actions because the survival statute confers a right of action "in favor of the heirs, legal representatives, and estate of the injured person." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986). The amicus notes that earlier cases relied upon by the supreme court held that heirs lacked standing to sue on behalf of the estate, but that these cases did not involve a survival action. *See e.g., Frazier v. Wynn,* 472 S.W.2d 750, 752–53 (Tex.1971) (suit for breach of decedent's lease); *see also Youngs v. Youngs,* 26 S.W.2d 191, 192–93 (Tex. Comm'n App.1930, judgm't adopted) (suit to recover real and personal property previously conveyed by the decedent).

The amicus's contention ignores the fact that both *Shepherd* and *Stewart* involved survival actions in which the courts evaluated the standing requirements for an heir to sue on behalf of an estate. In *Shepherd,* the court held the decedent's common law wife had standing after concluding no administration of the estate was necessary because the evidence showed the decedent's common law wife was his only heir, the family, including the wife, had resolved the estate's disposition, and all debts of the estate had been paid. *See* 962 S.W.2d at 33–34. Similarly, in *Stewart,* the court held the decedent's husband lacked standing after concluding adminis-

tration of the estate was necessary because the evidence showed the husband was not the only beneficiary of his wife's estate and the estate had debts. *See* 978 S.W.2d at 207.

Nevertheless, the amicus focuses on language in the supreme court's opinion in *Shepherd* approving the court of appeals' determination of standing. *See* 962 S.W.2d at 34. The court of appeals had concluded the surviving spouse was a "legal representative of the deceased for purposes of the survivorship statute" and thus, held that "neither section 71.021(b), nor *Frazier* require an administration of decedent's estate before a surviving spouse is entitled to assert personal injury claims for the estate under the survival statute." *See Shepherd v. Ledford,* 926 S.W.2d 405, 414 (Tex.App.—Fort Worth 1996, writ granted).[2] The supreme court, however, did not address this particular aspect of the court of appeals' holding. Rather, the supreme court concluded the court of appeals' determination of standing was correct based on facts that clearly established no need for an administration. *See* 962 S.W.2d at 34. No such facts were established in this case. Accordingly, we deny the Cammacks' motion for rehearing.

Justice O'NEILL, not participating.

---

1. In *Frazier,* the court recognized there are exceptions to the standing rule, but did not identify those exceptions. *See* 472 S.W.2d at 752. In *Youngs,* the court recognized an exception in exigent circumstances where suit is necessary to preserve estate property. *See* 26 S.W.2d at 193 (citing *Walker v. Abercrombie,* 61 Tex. 69).

2. In *City of San Antonio v. Rodriguez,* the court also held that *Frazier* was inapplicable to a survival action, but only because the decedents' parents sued as personal representatives of the estate and not exclusively as heirs at law. *See* 856 S.W.2d at 564.