Deanna Torres, Individually, and as Next Friend of Antoinette Chapa, a Minor v. City of Waco and Sports Supply Group, Inc., d/b/a BSN Sports















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-332-CV

     DEANNA TORRES, INDIVIDUALLY,
     AND AS NEXT FRIEND OF 
     ANTOINETTE CHAPA, A MINOR,
                                                                         Appellant
     v.

     CITY OF WACO AND 
     SPORTS SUPPLY GROUP, INC.,
     D/B/A BSN SPORTS,
                                                                         Appellees
 

From the 74th District Court
McLennan County, Texas
Trial Court # 96-2683-3
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Deanna Torres filed suit against the City of Waco (the “City”) and Sports Supply Group, Inc.,
d/b/a BSN Sports (“BSN”) for injuries her six-year-old daughter Antoinette Chapa sustained when
a volleyball judge’s stand manufactured by BSN fell on Chapa while in an after-school program
operated by the City. Torres alleged in her original petition that the City is liable because of the
negligence of its employees in connection with the judge’s stand. She alleged negligence, breach
of implied warranty, defective product design, and deceptive trade practices causes of action
against BSN. The court granted summary judgment motions filed by the City and BSN without
specifying the basis for its rulings.
      Torres presents eight issues on appeal. In the first five, she challenges the judgment granted
the City, claiming that: (1) the City failed to conclusively establish the affirmative defense of
governmental immunity; (2) she raised a material fact issue on the question of whether the City’s
operation of the after-school program was a proprietary function to which sovereign immunity
does not apply; (3) the City failed to conclusively establish that the operation of the after-school
program was a recreational activity under chapter 75 of the Civil Practice and Remedies Code; (4)
she raised a material fact issue on the question of whether the after-school program was such a
recreational activity; and (5) assuming the after-school program is a recreational activity, the City
failed to conclusively establish that it did not wantonly, willfully, or with gross negligence cause
Chapa’s injuries.
      Torres’s remaining three issues challenge the summary judgment granted BSN. In these
issues, she claims that: (1) she presented sufficient evidence on the single ground raised in BSN’s
no-evidence summary judgment motion to defeat the motion; (2) BSN’s no-evidence motion failed
to adequately specify any other element on which it was entitled to judgment; and (3) assuming
BSN’s motion adequately specified other elements, she presented sufficient evidence to defeat the
motion on those other elements.
BACKGROUND
      In May 1995, Torres enrolled Chapa in the “‘Fun in the Sun’ Summer Camp” program
operated by the City at the South Waco Recreational Center. During the summer months, Chapa
spent the entire day in the City’s care. When school began in the fall, a school bus transported
Chapa to the Center for after-school care. Chapa sustained the injuries sued upon in October 1995
when a volleyball judge’s stand at the Center fell on her.
      Torres filed this suit both individually and as next friend to Chapa. She claimed in her
original petition that the City is liable because of the negligence of its employees in connection
with the judge’s stand. She alleged various acts and omissions by City employees at the Center
which proximately caused Chapa’s injuries. Torres alleged that BSN designed and manufactured
the judge’s stand. She asserted in her original petition that BSN is liable under theories of
negligence, breach of implied warranty, products liability under sections 402A and 402B of the
Restatement (Second) of Torts, and deceptive trade practices.



      The City moved for summary judgment on the grounds that: (1) it has governmental immunity
from Torres’s negligence claim; (2) it had no duty toward Chapa “which would give rise to
liability for negligence” because Chapa was engaged in recreational activities when she was
injured; and (3) it is not a “person” within the meaning of the DTPA.


 BSN filed a summary
judgment motion claiming that a review of Torres’s discovery responses and excerpts from
Torres’s and Chapa’s depositions reveals that no evidence exists that any BSN product caused
injury to Chapa or that the judge’s stand was defective. The court granted these motions without
specifying the basis for its rulings.
STANDARD OF REVIEW
      To prevail on a summary judgment motion, the movant must demonstrate that there are no
genuine issues of material fact and that it is entitled to judgment as a matter of law. See American
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Management
Co., 690 S.W.2d 546, 548 (Tex. 1985). We disregard all conflicts in the evidence and accept the
evidence favoring the nonmovant as true. See Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965); Kehler v. Eudaly, 933 S.W.2d 321, 324
(Tex. App.—Fort Worth 1996, writ denied). We indulge every reasonable inference from the
evidence in favor of the nonmovant and resolve any doubts in its favor. See American Tobacco,
951 S.W.2d at 425; Nixon, 690 S.W.2d at 548.
      A trial court cannot grant summary judgment on a ground not expressly presented in the
summary judgment motion. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). 
“When the trial court does not specify the basis for its summary judgment, the appealing party
must show it is error to base it on any ground asserted in the motion.” Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995). We consider only those grounds “the movant actually
presented to the trial court” in the motion. Cincinnati Life Ins., 927 S.W.2d at 625; Fletcher v.
Edwards, 26 S.W.3d 66, 74 (Tex. App.—Waco 2000, pet. denied).
THE JUDGMENT FOR THE CITY
      Torres avers in her first issue that the City failed to conclusively establish the affirmative
defense of governmental immunity. The City responds that it established its entitlement to
judgment as a matter of law on its claim of immunity because: (1) Torres did not plead in her
original petition that Chapa’s injuries were caused by the City’s use of tangible personal or real
property; and (2) Torres did not raise the issue of governmental versus proprietary function in her
response to the City’s motion.
Condition or Use of Tangible Personal or Real Property
      Under the Texas Tort Claims Act, a government entity is liable for personal injuries caused
by a condition or use of tangible personal or real property to the same extent a private person
would be liable. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 1997) (emphasis
added). Torres alleged in her original petition that the City’s conduct “involves the use of tangible
personal property” which proximately caused Chapa’s injuries because the City failed to:
      •    adequately staff the daycare program;
 
      •    use appropriate and safe equipment and tangible personal property;
 
      •    adequately secure the judge’s stand to prevent the stand from tipping or falling over;
 
      •    adequately monitor and supervise the children;
 
      •    adequately train the employees of the daycare center;
 
      •    adequately monitor the employees; and
 
      •    adequately supervise the employees.

      The third allegation arguably touches upon the manner in which the City used the judge’s
stand. However, it is similar to “non-use” allegations rejected by the Supreme Court on other
occasions.


 See, e.g., Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 585 (Tex. 1996) (failure
to use injectable medication); Kassen v. Hatley, 887 S.W.2d 4, 14 (Tex. 1994) (failure to provide
medication). Accordingly, we conclude that Torres’s allegation that Chapa’s injuries were
proximately caused by the City’s failure to adequately secure the judge’s stand does not constitute
an allegation that the injuries were caused by the City’s use of the judge’s stand.



      Nevertheless, when a summary judgment motion is premised on a deficiency in the plaintiff’s
pleadings, we must review the challenged pleadings de novo “taking all allegations, facts, and
inferences in the pleadings as true and viewing them in a light most favorable to the pleader.” 
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); accord Higbie Roth Constr. Co. v.
Houston Shell & Concrete, 1 S.W.3d 808, 811-12 (Tex. App.— Houston [1st Dist.] 1999, pet.
denied). When we construe Torres’s petition under this standard, we construe her allegation that
the City’s failure to “adequately secure the judge’s stand” proximately caused Chapa’s injuries as
an allegation that the condition of the judge’s stand proximately caused her injuries. See Barker
v. City of Galveston, 907 S.W.2d 879, 886 n.6 (Tex. App.— Houston [1st Dist.] 1995, writ
denied) (construing allegation of negligent use of swings by city as allegation of claim involving
condition of tangible personal or real property because plaintiff did not allege that a city employee
caused him injury by an employee’s use of a swing); see also Davis v. City of Palestine, 988
S.W.2d 854, 858 (Tex. App.— Tyler 1999, no pet.) (pleadings must allege facts showing that
governmental entity’s negligence was proximate cause of injury and that negligent conduct
involved use or condition of tangible personal or real property); Cherry v. Texas Dep’t of Crim.
Justice, 978 S.W.2d 240, 243 (Tex. App.— Texarkana 1998, no pet.) (same). Torres’s response
to the City’s summary judgment motion lends further support to this construction. In this
response, Torres contends that the City is not immune from liability because Chapa’s injuries
“were caused by the use or condition of tangible personal property owned by the defendant City.” 
(emphasis added).
      For these reasons, we hold that, even though Torres did not allege that Chapa’s injuries were
caused by the City’s use of the judge’s stand, she did allege that the injuries were caused by the
condition of the judge’s stand. Thus, she alleged a defective condition of tangible personal
property actionable under section 101.021(2) of the Tort Claims Act. See Barker, 907 S.W.2d
at 886 n.6; Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).
Governmental v. Proprietary Function
      In light of this holding, the question of whether the City’s operation of the after-school
program is a governmental or proprietary function is irrelevant to the City’s immunity. If the
City’s operation of the program constitutes a governmental function, then the City is liable under
the Tort Claims Act to the same extent as a private entity would be liable for the alleged defective
condition.


 See Texas River Barges v. City of San Antonio, 21 S.W.3d 347, 356 (Tex. App.— San
Antonio 2000, pet. denied) (existence of liability for tort committed while engaged in
governmental function must be analyzed under Tort Claims Act); Herschbach v. City of Corpus
Christi, 883 S.W.2d 720, 730 (Tex. App.— Corpus Christi 1994, writ denied) (same); see also
Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) (Vernon Supp. 2001). Conversely, the City
has no immunity from liability if its operation of the program constitutes a proprietary function. 
See City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex. 1997) (citing Dilley v. City of Houston, 148
Tex. 191, 193, 222 S.W.2d 992, 993 (1949)); Texas River Barges, 21 S.W.3d at 356;
Herschbach, 883 S.W.2d at 730; see also Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)
(Vernon Supp. 2001). In this situation, the City would likewise be liable to the same extent as a
private entity. Id. 
      For these reasons, we sustain Torres’s first issue in part and overrule it in part.
Recreational Use
      Torres claims in her third issue that the City failed to conclusively establish that its operation
of the after-school program was a recreational activity under chapter 75 of the Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 75.001-75.004 (Vernon Supp.
2001). If the after-school program was a recreational activity within the meaning of the statute,
then the City owed to Chapa only the degree of care it would owe a trespasser on the premises. 
See id. §§ 75.002(c)(2), 75.003(e). This standard of care requires that the City not injure Chapa
“willfully, wantonly, or through gross negligence.”


 Texas Utils. Elec. Co. v. Timmons, 947
S.W.2d 191, 193 (Tex. 1997); Flye v. City of Waco, No. 10-00-260-CV, slip op. at 5, 2001 Tex.
App. LEXIS 4160, at *6 (Tex. App.— Waco June 20, 2001, no pet. h.).
      Under the version of chapter 75 applicable to Torres’s case, “‘[r]ecreation’ means an activity
such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving,
nature study, cave exploration, and waterskiing and other water sports.” Act of May 15, 1989,
71st Leg., R.S., ch. 736, § 1, 1989 Tex. Gen. Laws 3299, 3299 (amended 1997) (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 75.001(3)) (hereinafter, “Tex. Civ. Prac. & Rem.
Code Ann. § 75.001(3)”). As movant, the City bore the burden of establishing as a matter of law
that Chapa came to the Center “for recreation.” See Dubois v. Harris County, 866 S.W.2d 787,
790 (Tex. App.— Houston [14th Dist.] 1993, no writ); Spencer v. City of Dallas, 819 S.W.2d
612, 615-16 (Tex. App.—Dallas 1991, no writ).
      The City relies on the following summary judgment evidence to establish that Chapa came to
the Center “for recreation.” Torres testified in her deposition that she enrolled Chapa in a
“recreation program” at the Center in the Summer of 1995. She described the Fall 1995 program
as “an after-school program.” According to Torres, the children in the after-school program
“were playing games and doing arts and crafts and that sort of thing.” Chapa testified in her
deposition that she played games and ate snacks at the Center. 
      Torres attached a copy of the City’s “Standards of Care” for its youth programs to her
summary judgment response. These standards provide the following regarding activities in such
programs:
      14. Programming
 
            A.  Program employees will attempt to provide activities for each group according to the
participants’ ages, interests, and abilities. The activities must be appropriate to
participants’ health, safety, and well-being. The activities also will be flexible and
promote the participants’ emotional, social, and mental growth.
 
            B.  Program employees will attempt to provide indoor and outdoor time periods to
include:
 
                  (1)  alternating active and passive activities,
 
                  (2)  opportunity for individual and group activities, and
 
                  (3)  outdoor time each day weather permits.

      Indulging every reasonable inference from this evidence and resolving all doubts in Torres’s
favor, we conclude that the City failed to conclusively establish that Chapa came to the Center “for
recreation” within the meaning of section 75.001(3). Although the after-school program had
recreational activities as one of its major components, it is equally clear that the scope of the
program went far beyond mere “recreation.” Accordingly, we sustain Torres’s third issue.
      In view of our disposition of Torres’s first and third issues, we need not address her second,
fourth, and fifth issues.
THE JUDGMENT FOR BSN
      Torres asserted negligence, breach of implied warranty, defective product design, and
deceptive trade practices causes of action against BSN. BSN filed what it purports to be a “no-evidence” summary judgment motion on all of Torres’s claims. BSN alleges in its motion that
there is no evidence “that any product manufactured, distributed, and/or sold by [BSN] caused any
injury to [Chapa].” BSN further claims in the motion that Torres can produce no evidence of “any
defect in a product manufactured by [BSN] and the resulting injury therefrom.” 
      BSN attached discovery responses and deposition excerpts to support these contentions. 
However, this Court has determined that it will review a purported “no-evidence” motion for
summary judgment accompanied by supporting evidence under the traditional standard of review
for summary judgments.


 See Grimes v. Andrews, 997 S.W.2d 877, 880 n.1 (Tex. App.— Waco
1999, no pet.); see also Crow v. Rockett Special Util. Dist., 17 S.W.3d 320, 328 (Tex. App.—
Waco 2000, pet. denied); Ethridge v. Hamilton County Elec. Coop. Ass’n, 995 S.W.2d 292, 295
(Tex. App.—Waco 1999, no pet.).
      To prevail in a defective product design suit, the plaintiff must establish: 
      •    the product was defectively designed when sold; 
 
      •    the product was unreasonably dangerous (weighing the risk and utility) to the user;
 
      •    the product reached the user without substantial change in the condition in which it was
sold;
 
      •    the defective and unreasonably dangerous condition of the product caused physical harm
to the user;
 
      •    a safer alternative design existed at the time of manufacture which was economically and
technologically feasible; and
 
      •    the defect was a producing cause of injury.

See Allen v. W.A. Virnau & Sons, Inc., 28 S.W.3d 226, 232 (Tex. App.— Beaumont 2000, pet.
denied); Jaimes v. Fiesta Mart, Inc., 21 S.W.3d 301, 306 (Tex. App.— Houston [1st Dist.] 1999,
pet. denied); accord Hernandez v. Tokai Corp., 2 S.W.3d 251, 256-57 (Tex. 1999).
      Torres contends in her sixth issue that she presented sufficient evidence to raise a fact issue
on the element of causation.


 She alleges in her seventh issue that BSN’s motion does not
adequately specify any other element on which it is entitled to judgment. She claims in her eighth
issue that, assuming BSN’s motion adequately specifies other elements, she presented sufficient
evidence to raise a fact issue on those other elements.
      BSN asserts in reply to Torres’s seventh issue that its motion challenges the elements of
defective design and producing cause. In Torres’s response to BSN’s motion, she relied on the
report of a civil engineer concerning alleged defects in the design of the judge’s stand and
producing cause. She further relied on the opinions of a neurologist as evidence that the incident
caused injury to Chapa. Thus, Torres’s response indicates that she construed BSN’s motion to
challenge the elements of causation and defective design. Because Torres provided evidence
responsive to the elements BSN claims that its motion challenges and because she did not object
to the specificity of BSN’s motion in the trial court, we overrule her seventh issue. See McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993); Williams v. Bank One, Tex.,
N.A., 15 S.W.3d 110, 117 (Tex. App.— Waco 1999, no pet.); Porterfield v. Galen Hosp. Corp.,
948 S.W.2d 916, 920 (Tex. App.—San Antonio 1997, writ denied).
      BSN claims in its response to Torres’s eighth issue that the expert report offered by Torres
to show evidence of defective design does not constitute competent summary judgment evidence
because it is conclusory in nature.


 Settled case law establishes that an expert’s conclusory opinion
does not suffice to raise a fact issue in response to a summary judgment motion. See Murillo v.
Garza, 904 S.W.2d 688, 692 (Tex. App.— San Antonio 1995, writ denied); Jordan v. Geigy
Pharmaceuticals, 848 S.W.2d 176, 179-80 (Tex. App.— Fort Worth 1992, no writ); see also
Mercer v. Daoran Corp., 676 S.W.2d 580, 583 (Tex. 1984) (conclusory lay testimony does not
raise fact issue); Augusta Court Co-Owners’ Ass’n v. Levin, Roth & Kasner, P.C., 971 S.W.2d
119, 126 (Tex. App.— Houston [14th Dist.] 1998, pet. denied) (same). For expert opinion to
constitute competent, non-conclusory summary judgment evidence, “the expert must explain the
basis of his statements to link his conclusions to the facts.” Earle v. Ratliff, 998 S.W.2d 882, 890
(Tex. 1999). Stated another way, competent expert testimony “states the underlying facts and
relates an objective conclusion.” Geick v. Zigler, 978 S.W.2d 261, 266 (Tex. App.— Houston
[14th Dist.] 1998, no pet.) (quoting Beatty v. Charles, 936 S.W.2d 28, 31 (Tex. App.— San
Antonio 1996, no writ); see also Tex. R. Evid. 705(c).
      Civil engineer Steve Irwin provided the report at issue. Irwin stated in the first paragraph of
the report:
Investigation into the referenced matter has revealed that a BSN Sports Judges Stand fell
onto Ms. Torres causing bodily injury. Two things are immediately obvious. First, play
ground or play room equipment should not be so designed as to fall during use. Second,
equipment that is placed in such areas should be either secured or guarded from use by
those not familiar with its dangers.
 
He opined that the judge’s stand “could have been designed with securing devices in place. Such
devices would keep the stand from toppling . . . .” He then reviewed a 1995 BSN catalog
and identified four other BSN products depicted in the catalog which had the type of securing
devices he contemplated. He concluded:
Any of these device options all ready [sic] in use by BSN Sports would reduce or
eliminate the potential for toppling the Judge’s Stand. If the design options were not in
place, the equipment should have [been] stored or supervised by those using the
equipment.
 
If the Judge’s Stand was outfitted with a securing device by the manufacturer, or secured
or stored properly by the City, the injuries to Deanna Torres would not have happened.

      BSN contends that Irwin’s report is inadequate because he: (1) offered no evidence concerning
“the underlying facts” about the incident in question; (2) “neither identified the reasoning behind
his advocacy of the alternative designs, nor discussed their effects upon the ultimate utility of the
product”; and (3) “offered no factual support for his conclusions that the ‘defective design’ served
as the producing cause of [Chapa’s] injuries.”
      The second of BSN’s contentions goes to the “safer alternative design” element of Torres’s
products liability claim. See Allen, 28 S.W.3d at 232; Jaimes, 21 S.W.3d at 306. BSN did not
challenge this element of Torres’s claim in its summary judgment motion. Accordingly, we
conclude that BSN cannot now complain that Irwin’s report is inadequate because it offers no
competent evidence of a safer alternative design. Cf. Fletcher, 26 S.W.3d at 74 (“We consider
only those grounds ‘the movant actually presented to the trial court’ in the motion”) (quoting
Cincinnati Life Ins., 927 S.W.2d at 625). In other words, Torres did not need to proffer
competent summary judgment evidence on an issue not raised in BSN’s motion.
      BSN’s first contention goes to Irwin’s understanding of the facts surrounding Chapa’s injuries. 
BSN notes that Irwin mistakenly identified Torres as the injured party in his report. Torres replies
that Irwin understood the factual basis of the incident because he stated in the affidavit
accompanying his report that the report concerns “the injuries suffered by the minor child
Antoinette Chapa.” Regardless of the identity of the injured party, Irwin’s report clearly evinces
his understanding that a child was injured when a BSN judge’s stand fell on her. His report
likewise demonstrates his understanding that the stand was free-standing at the time of the incident
(i.e., not “secured”). Accordingly, we conclude that Irwin’s report adequately states the
underlying facts.
      BSN’s final challenge to Irwin’s report concerns the factual basis for his conclusion that the
alleged defective condition of the judge’s stand was the producing cause of Chapa’s injuries. In
the products liability context, “[a] producing cause is ‘an efficient, exciting, or contributing cause,
which in a natural sequence, produced injuries or damages complained of, if any.’” Union Pump
Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995) (quoting Haynes & Boone v. Bowser Bouldin,
Ltd., 896 S.W.2d 179, 182 (Tex. 1995); Rourke v. Garza, 530 S.W.2d 794, 801 (Tex. 1975);
Ford Motor Co. v. Cammack, 999 S.W.2d 1, 7 (Tex. App.— Houston [14th Dist.] 1998, pet.
denied). “There can be more than one producing cause.” Haynes & Boone, 896 S.W.2d at 182
(quoting Rourke, 530 S.W.2d at 801); Checker Bag Co. v. Washington, 27 S.W.3d 625, 635 (Tex.
App.—Waco 2000, pet. denied). 
      Irwin identified four BSN products with stabilizing or securing features which the judge’s
stand did not have. Irwin concluded that the incident occurred because the judge’s stand was not
equipped with any of these features (defective design) and because the City did not properly secure
or store the judge’s stand (premise defect). Irwin sufficiently stated the underlying facts and
connected those facts to his conclusions regarding the design of the judge’s stand and the City’s
failure to properly secure or store it. Accordingly, his report is competent evidence that the design
of the judge’s stand was a “contributing cause” to Chapa’s injuries. See Union Pump, 898 S.W.2d
at 775; Ford Motor, 999 S.W.2d at 7.
      For these reasons, we conclude that Torres presented sufficient, competent evidence to raise
an issue of material fact on the elements of defective design and producing cause. Accordingly,
BSN failed to establish its entitlement to judgment as a matter of law on these elements. 
Therefore, the court erred in granting BSN’s motion for summary judgment. Thus, we sustain
Torres’s sixth and eighth issues.
      We reverse the judgment and remand this cause to the trial court for further proceedings
consistent with this opinion.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice
Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Reversed and remanded
Opinion delivered and filed June 27, 2001
Publish