(August 8, 2002)

■ LINDA SNYDER, Respondent, v PUENTE DE BROOKLYN REALTY CORPORATION et al., Appellants. [746 NYS2d 517] —Spain, J.

The subject of this action is a residential building located on Route 22 in the Town of Austerlitz, Columbia County. The sequence of events leading to this action can be briefly summa-

rized as follows.[1] Plaintiff purchased the premises with Jill Garfunkel, not a party to this action, for $220,000 in September 1987, taking a mortgage for $165,000 with the Hudson City Savings Bank (hereinafter the Bank), and each contributed $35,000 toward the down payment and renovation expenses. Plaintiff and Garfunkel, doing business as The Cedars Inn, had also entered into a written partnership agreement for the purpose of substantially renovating this large residence and converting it to a bed and breakfast establishment. In April 1988, in response to Garfunkel's desire to withdraw from the undertaking, plaintiff reached an oral agreement with defendant Ralph Feldman pursuant to which each agreed—in loose terms—to fulfill certain obligations to complete the renovations, pay the mortgage and open it as a bed and breakfast within a few months while plaintiff continued to reside therein. In July 1988, Garfunkel transferred her common interest in the property to defendant Puente De Brooklyn Realty Corporation (hereinafter Puente), reflected in a recorded deed, in exchange for a payment of $30,000 provided by Feldman, then the sole shareholder and officer of the corporation. Puente's interest in this property was its sole asset at that time. Plaintiff never entered into a partnership or any written agreement with either Feldman or Puente.

The Bank eventually commenced a foreclosure action in December 1989 (based upon mortgage arrears and Garfunkel's transfer of title without its consent) against plaintiff and Garfunkel, as mortgagors, and against Puente, as an owner, all of whom defaulted, and a judgment of foreclosure was entered. A friend of Feldman, defendant Gail De Raffele, purchased the premises for the minimum bid of $200,000 at the foreclosure sale; that bid was made by Feldman who was present and who provided the funds to complete the purchase. The deed was recorded in De Raffele's name, who thereafter commenced summary eviction proceedings against plaintiff, which resulted in a judgment of eviction, later reversed on appeal.

While her appeal of the judgment of eviction was pending and after a tentative settlement of that action was reached, plaintiff moved out of the premises in October 1991 and thereafter commenced this action in 1992 against Puente, Feldman

---

1. To the extent that this Court's factual recitation, which is based upon our reading of the record, differs from some of the findings of Supreme Court, we are exercising our authority to review factual findings in a nonjury case while taking into consideration the trial court's advantage in seeing the witnesses (*see, Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499; *Town of Dresden v Voutyras*, 244 AD2d 779, 780).

and De Raffele. The complaint also named as a defendant Joseph Pogostin, Feldman's attorney, friend and business associate who had also represented Puente and De Raffele. Plaintiff's complaint alleged that all four defendants had engaged in a scheme to defraud her of her title to and investment in the property and had violated their fiduciary duty to her as a cotenant, primarily relying on Feldman's refusal to pay his agreed-upon share of mortgage payments, De Raffele's purchase of the property at the foreclosure sale with Feldman's funds, and defendants' conduct in taking possession of the property and refusing to record in court or finalize a proposed settlement that defendants had reached with plaintiff during the pendency of plaintiff's appeal of the judgment of eviction. Notably, in 1995, De Raffele transferred title of the premises to Feldman for no consideration.

Defendants' answer disputed many allegations central to plaintiff's entitlement to relief on her complaint, and raised affirmative defenses and counterclaims claiming, inter alia, that plaintiff failed to abide by her agreement with Feldman whereas Feldman had done so, and that the foreclosure resulted from plaintiff's own nonpayment of the mortgage, causing Feldman, Puente and De Raffaele to sustain damages.

A nonjury trial was held in May 2000 at which only plaintiff, Feldman, Pogostin and Jose Rio, a construction worker retained by Feldman to work on the premises, testified. Supreme Court found that all four defendants had conspired to defraud plaintiff to gain title to the property and had breached their fiduciary duty to plaintiff.[2] The court concluded that plaintiff was entitled to $44,000 in compensatory damages with 9% interest from the date of the 1990 foreclosure sale, for which defendants were held jointly and severally liable. Supreme Court's decision was supplemented by the parties' separately submitted proposed findings of fact and conclusions of law which were marked by the court as either adopted or rejected in whole or in part. Thereafter, on the parties' cross motions for reargument and renewal, Supreme Court awarded plaintiff additional compensatory damages of $8,500 plus interest—an amount the court had deducted in calculating plaintiff's award in its prior decision—finding that plaintiff had never in fact received that amount as provided in the proposed settlement of

---

**2.** To the extent that Supreme Court held that Feldman had breached his oral agreement with plaintiff, we note that plaintiff did not plead a cause of action for breach of contract but, at most, pleaded that Feldman and Puente had failed to make mortgage payments and renovations as agreed in support of her breach of fiduciary and fraud causes of action.

the eviction proceeding. Defendants appeal, raising a variety of issues, some of which we find have merit and require modification of the judgments and order appealed from.

As a starting point, we note the fundamental but erroneous supposition underlying plaintiff's complaint, proof and trial theory, as well as the analysis of Supreme Court's decision, in treating all four defendants as if they shared a common status relative to plaintiff, the subject property and the joint venture, i.e., in proceeding as if all four defendants stand and fall together when their liability to plaintiff, if any, is evaluated. In fact, the substantially unrefuted testimonial and documentary evidence presented at trial unequivocally established a materially distinguishable role of each defendant in the events which formed the basis for this action.

Plaintiff states causes of action sounding in conspiracy to defraud and breach of a fiduciary duty. Notably, conspiracy to commit a tort such as fraud is not an independent cause of action in this State but, rather, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort" (*Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969; *see, Walters v Pennon Assoc.*, 188 AD2d 596, 596; *Raymond Corp. v Coopers & Lybrand*, 105 AD2d 926, 926-927). The elements of fraud are misrepresentation or concealment of a material fact, falsity, scienter and deception (*see, Barclay Arms v Barclay Arms Assoc.*, 74 NY2d 644, 646-647). While plaintiff need not allege and prove that each defendant committed every element of fraud, plaintiff must establish facts which "support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose * * * [and,] [w]hen scienter is lacking, the mere fact that a defendant's otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for a finding that he or she conspired to defraud" (*LeFebvre v New York Life Ins. & Annuity Corp.*, 214 AD2d 911, 912-913 [citations omitted]; *see, National Westminster Bank USA v Weksel*, 124 AD2d 144, 147, *lv denied* 70 NY2d 604).

With regard to plaintiff's claim that defendants allegedly breached a fiduciary duty to her, the source of each defendant's duty to plaintiff is not identified in her complaint. Supreme Court appears to have premised its breach of fiduciary duty finding on the principle that a confidential, fiduciary relationship exists between cotenants who ordinarily may not purchase or acquire an adverse title to or encumbrance against the common property without the other's consent and, if a cotenant

does so either directly or indirectly, as at a foreclosure sale, he or she is deemed to have done so for the benefit of all cotenants, particularly where the purchaser has essentially invited the foreclosure by defaulting or contriving with others to cause a foreclosure (*see, Jemzura v Jemzura*, 36 NY2d 496, 502-503; *Van Duzer v Anderson*, 306 NY 707, *affg* 282 App Div 779; *Thayer v Leggett*, 229 NY 152, 157-158; *Carpenter v Carpenter*, 131 NY 101, 109; *Knolls v Barnhart*, 71 NY 474; *Smith v Butler*, 215 App Div 361, 365; *see also, Birnbaum v Birnbaum*, 73 NY2d 461, 465; 24 NY Jur 2d, Cotenancy and Partition, §§ 80, 82, at 403-405; Restatement [Second] of Torts § 874). While this principle of fiduciary duty among cotenants is sound, among these defendants the only cotenant of plaintiff was Puente, acting through its sole officer and shareholder, Feldman.

With plaintiff's causes of action thus framed, we turn to Supreme Court's findings as they relate to each defendant. Regarding Pogostin, we find that his motion to dismiss the complaint against him in its entirety—made at the close of plaintiff's case—should have been granted. The testimony and documentary evidence adduced at trial established that, at all times relevant to plaintiff's complaint, Pogostin, a long-time friend and business associate of Feldman, acted primarily as an attorney advising Feldman, Puente and De Raffele and representing these clients' interests. At the time when Feldman reached an oral agreement with plaintiff and Puente took title to one-half interest in the property, Pogostin had already divested himself of his formerly held one-third interest in Puente. Pogostin never held any interest in the premises, was not indebted on the mortgage, never invested in the premises or performed renovation work on it, had no agreements of any kind with plaintiff and never represented her in any capacity. Rather, Pogostin's involvement consisted of conduct such as advising Feldman to undertake the project, attending an early meeting at which Feldman and plaintiff reached an oral agreement and where Pogostin may have made a proposal—which never materialized—to provide funds to buy out Garfunkel, periodically visiting the premises during which he criticized plaintiff's failure to complete work as agreed to, and providing Feldman with progress reports. Pogostin also counseled Feldman as the renovations failed to progress, advising him to allow foreclosure; he did not advise Feldman to purchase the property at the foreclosure sale, although he did suggest putting the deed in De Raffele's name and represented his clients at the foreclosure sale. Likewise insufficient is Pogostin's involvement in De Raffele's efforts as the new owner to evict plaintiff and to reach a settlement with plaintiff.

Significantly, the record is barren of any proof that Pogostin made any material misrepresentations to plaintiff or concealed material matters from her, or that he knowingly agreed to cooperate with his clients (Feldman, Puente or De Raffele) in a fraudulent scheme to deprive plaintiff of title to her property, so as to support a conspiracy to defraud cause of action (*see, LeFebvre v New York Life Ins. & Annuity Corp.*, 214 AD2d 911, 912, *supra*; *National Westminster Bank USA v Weksel*, 124 AD2d 144, 147, *supra*). Supreme Court's conclusion that Pogostin was "more than just an attorney, but more of a principal participant as the work progressed"—based upon Pogostin's weekend visitation and inspection of the premises several times a month while on his way to and from his Vermont summer home with his family, clearly done out of curiosity and on Feldman's behalf—is unfounded. With regard to Supreme Court's finding that Pogostin breached a fiduciary duty to plaintiff, Pogostin was never a cotenant of plaintiff and never acquired any interest adverse to her, and the record (like the complaint) contains no facts establishing the existence of a relationship between him and plaintiff as would give rise to a fiduciary duty by him to her (*cf., Birnbaum v Birnbaum*, 73 NY2d 461, *supra*). Further, plaintiff failed to demonstrate that Pogostin knowingly participated in or induced a breach of someone else's fiduciary duty to plaintiff (*see, S & K Sales Co. v Nike, Inc.*, 816 F2d 843, 847-850; *Whitney v Citibank, N.A.*, 782 F2d 1106, 1115; *Wechsler v Bowman*, 285 NY 284, 291; *Fallon v Wall St. Clearing Co.*, 182 AD2d 245, 251; *Marcus v Marcus*, 92 AD2d 887, 887-888; *Pace v Perk*, 81 AD2d 444, 450-455; *Rosen v Rosen*, 78 AD2d 911; *see also*, Restatement [Second] of Torts § 874, Comment c; § 876 [b]). There is, thus, no basis for the verdict against Pogostin.

Likewise, plaintiff failed to adduce evidence demonstrating that De Raffele made any misrepresentations or concealed material matters or supporting an inference that she knowingly agreed to cooperate in a fraudulent scheme so as to support the claim that she conspired to defraud plaintiff (*see, LeFebvre v New York Life Ins. & Annuity Corp.*, *supra*, at 912-913; *National Westminster Bank USA v Weksel*, *supra*, at 147; *see also, Barclay Arms v Barclay Arms Assoc.*, 74 NY2d 644, *supra*). De Raffele did not testify at trial and the proof established merely that she purchased the premises at the foreclosure sale—upon Feldman's bid and openly using Feldman's funds— and thereafter pursued lawful means to obtain a judgment of eviction against plaintiff. Neither of these actions establish De Raffele's knowing participation in a conspiracy to defraud plaintiff (*see, LeFebvre v New York Life Ins. & Annuity Corp.*,

*supra* at 912-913). Similarly, the proof is devoid of facts supporting the finding that De Raffele had a fiduciary duty to plaintiff, having never been a cotenant of plaintiff, or supporting an inference that De Raffele knowingly aided or induced another's breach of fiduciary obligations to plaintiff (*see, S & K Sales Co. v Nike, Inc., supra* at 847-848; *Wechsler v Bowman, supra* at 291). As such, the verdict against De Raffele is also without basis in law or fact.

We turn, then, to the verdict against Feldman and Puente. Puente, a corporation, acquired from Garfunkel a common interest in the premises thereby becoming a cotenant of plaintiff. Initially, we find that the record evidence is insufficient to support plaintiff's claim that either Feldman or Puente defrauded her or conspired to defraud her of her title to the premises (*see, Barclay Arms v Barclay Arms Assoc., supra* at 646-647; *LeFebvre v New York Life Ins. & Annuity Corp., supra* at 912-913; *National Westminster Bank USA v Weksel, supra* at 147). We find, however, that the proof adduced at trial supports Supreme Court's determination that Puente's conduct—acting through its sole shareholder and officer, Feldman—in failing to make any payments on the mortgage until October 1988 and thereafter abandoning the project and refusing to make any further mortgage payments, contributed to the foreclosure and led to Feldman acquiring an adverse title to their common property subsequent to the foreclosure sale and, thus, constituted a breach of Puente's fiduciary duty to plaintiff (*see, Birnbaum v Birnbaum*, 73 NY2d 461, 465, *supra*; *Thayer v Leggett*, 229 NY 152, *supra*; *Carpenter v Carpenter*, 131 NY 101, *supra*).

The record reflects that, in April 1988, plaintiff and Feldman agreed to share equally the monthly mortgage obligation, which at that time was $2,380 including escrowed payments for taxes and insurance. The parties also agreed that Feldman's obligation to pay on the mortgage would continue until the enterprise was operational, a period of time which both parties unrealistically estimated to be two months after Puente took title from Garfunkel. Even though Feldman, an experienced contractor and real estate developer, began working on the premises in June 1988 and acquired Garfunkel's share of the title in Puente's name in July 1988, he never paid anything toward the mortgage until October 1988. Notably, the last time a full mortgage payment was timely made was in April 1988. In October 1988, after plaintiff had fallen behind in the mortgage, she persuaded Feldman to make a single payment of $6,000 which represented roughly five months of his agreed 50% share

($1,190) of each monthly payment ($2,380). Thereafter, amidst fundamental disagreements regarding their vision for the business and other essential issues, communication between them effectively ended, Feldman's work on the renovations ceased and, despite plaintiff's admonitions that the mortgage was in arrears and under threat of foreclosure, Feldman refused to make any further payments toward the mortgage; he readily admitted in his testimony that at that point he made a conscious decision to wait for the bank to foreclose and to purchase the premises at the foreclosure sale. Further, while Feldman was not himself a cotenant of plaintiff so as to support a fiduciary duty, the trial evidence supports the conclusion that Feldman knowingly aided and induced Puente—of which he was the sole shareholder and officer—to breach its fiduciary duty to plaintiff, making him liable for the full amount of damages caused thereby (*see, S & K Sales Co. v Nike, Inc.*, 816 F2d 843, 847-848, *supra*; *Wechsler v Bowman*, 285 NY 284, 291, *supra*; *Fallon v Wall St. Clearing Co.*, 182 AD2d 245, *supra*; *Marcus v Marcus*, 92 AD2d 887, *supra*; *Pace v Perk*, 81 AD2d 444, *supra*; *Rosen v Rosen*, 78 AD2d 911, *supra*).

The remaining contentions raised in defendants' brief do not undermine the judgments against Feldman and Puente, although the damage award requires modification. We reject defendants' contention that plaintiff's claims were precluded because there was no accounting or adjustment of the partnership affairs prior to commencement of this action, as the parties have not conducted business together since 1990, defendants never alleged the need for or asserted a counterclaim for an accounting, no complex accounting is involved, and the interest of judicial economy would not be served (*see, Morris v Crawford*, 281 AD2d 805, 806-807; *Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 115; *Agrawal v Razgaitis*, 149 AD2d 390; *Schuler v Birnbaum*, 62 AD2d 461, 463-464). Further, while we agree with defendants' contention that plaintiff failed to lay a proper foundation for the admission of a letter from the Town Code Enforcement Officer under the business records exception (*see*, CPLR 4518 [a]; *Matter of Leon R.R.*, 48 NY2d 117, 122) and, thus, defendants' objection to its admission should have been sustained, we find the error was harmless under the circumstances. The letter concerned the asserted inadequacy of the plumbing work which Feldman performed on the premises. However, Supreme Court's reliance on it was primarily limited to rejecting defendants' claims that plaintiff was solely responsible for the delays in the renovations and opening of the bed and breakfast. Since the determinative issues to Supreme Court were Feldman's failure to make

his agreed share of the mortgage payments and defendants' scheme to deprive plaintiff of her title by forcing a foreclosure, the hearsay evidence of Feldman's allegedly faulty plumbing work was truly harmless.

Next, we agree with defendants' contention that Supreme Court erred in its damage award by, inter alia, effectively compensating plaintiff twice for the same loss. In calculating a compensatory award in its initial order, the court reasonably awarded plaintiff her original $35,000 investment in the property, most of which was used toward a down payment on the $220,000 purchase price (*see, S & K Sales Co. v Nike, Inc.*, 816 F2d 843, 851-852, *supra*). However, Supreme Court should not have *also* awarded plaintiff one half of the equity in the property at the time of the foreclosure—i.e., one half of the $200,000 foreclosure sale price minus the $165,000 outstanding mortgage (½ of $35,000 = $17,500)—because the equity in the property at the time of the foreclosure was duplicative of plaintiff's initial investment. Further, the court in its July 2001 decision and order upon reargument should not have awarded plaintiff the amount (i.e., $8,500) that plaintiff had agreed to accept as part of the proposed settlement of De Raffele's proceeding seeking to evict plaintiff from the premises; the evidence in the record indicates that the settlement was never placed on the record or finalized and awarding plaintiff that amount in the context of this action is not justified. Finally, there is no basis upon which to disturb that portion of Supreme Court's judgments and order awarding plaintiff prejudgment interest payable from the September 24, 1990 foreclosure sale, at the statutory rate of 9% (*see*, CPLR 5001 [a]; 5004; *Spodek v Park Property Dev. Assoc.*, 96 NY2d 577).

Mercure, J.P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the judgments and order are modified, on the law and the facts, without costs, by reversing so much thereof as awarded plaintiff judgment against defendants Joseph Pogostin and Gail De Raffele; judgments against said defendants dismissed and the judgments in favor of plaintiff are reduced to a total award of $35,000 in damages; and, as so modified, affirmed.