**Nancy and Robert DENNY, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. 3:11–CV–1239.**

United States District Court, N.D. New York.

Aug. 13, 2013.

John Scarzafava, Esq., Scarzafava & Basdekis Law Firm LLP, Oneonta, NY, for Plaintiffs.

Brian P. Crosby, Esq., Robert G. Scumaci, Esq., Gibson, McAskill & Crosby, LLP, Buffalo, NY, Edward C. Stewart, Esq., Wheeler Trigg O'Donnell LLP Denver, CO, for Defendants.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

### TABLE OF CONTENTS

INTRODUCTION ...................................................266

FACTUAL BACKGROUND ..............................................266

STANDARD OF REVIEW ..............................................267

DISCUSSION ......................................................267
 Fraud on the Court—Third Cause of Action ...................267
 Res Judicata................................................268
 Collateral Estoppel ........................................270
 Statute of Limitations......................................272
 Fraud—First Cause of Action ...........................272
 Fraudulent Non–Disclosure of a Material Fact—Fourth Cause of Action.....273
 Civil Conspiracy—Fifth Cause of Action .................273
 Violations of RICO—Seventh Cause of Action ............273
 Conspiracy to Violate RICO—Eighth Cause of Action ....274
 Punitive Damages—Ninth Cause of Action ...................275

CONCLUSION ......................................................275.

## I. *INTRODUCTION*

On October 17, 2011, plaintiffs Nancy and Robert Denny ("the Dennys" or "plaintiffs") filed this action against Ford Motor Company ("Ford" or "defendant"), asserting causes of action sounding in fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). An amended complaint was filed on February 28, 2012. Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule ——") 12(b)(6) for failure to state a claim. Plaintiffs opposed, and defendant replied. Oral argument was heard in Utica, New York. Decision was reserved.

## II. *FACTUAL BACKGROUND*

On June 9, 1986, Nancy Denny was injured when she swerved to avoid hitting a deer on the road. The Ford Bronco II ("Bronco II") she was driving rolled over. In 1988, the Dennys brought a products liability action ("Denny I") against Ford in the Northern District of New York. The complaint alleged negligence, strict products liability, and breach of implied warranty. The central issue of the case, and similar litigation all over the country, was whether the Bronco II was defective in design due to its propensity to roll over. On November 17, 1992, after a three week jury trial before District Judge Thomas J. McAvoy in Binghamton, New York, the jury found for plaintiffs on the breach of implied warranty claim, and in favor of Ford on the strict products liability and negligence claims. The jury awarded plaintiffs $3 million in compensatory damages, but found Nancy Denny sixty percent at fault for her injuries, due to her maneuver to avoid the deer. Thus, her award was reduced to $1.2 million. Judgment was entered consistent with the verdict, and that judgment was ultimately affirmed by the Second Circuit Court of Appeals on March 19, 1996. *Denny v.*

*Ford Motor Co.*, 79 F.3d 12, 13 (2d Cir. 1996). Ford subsequently satisfied the judgment.

Plaintiffs now bring suit ("Denny II") against Ford, arguing that but for Ford's fraud and conspiracy during the pre-trial and trial phases of Denny I, plaintiffs would have recovered more damages because the jury would not have found Nancy Denny comparatively negligent and would have awarded punitive damages. Specifically, plaintiffs allege the following fraudulent and unlawful conduct: (1) Ford knowingly purchased and used the false and misleading testimony of former Ford engineer David J. Bickerstaff ("Bickerstaff") during its defense of Denny I (and concealed this from the court and plaintiffs); (2) Ford fraudulently concealed, destroyed, and misrepresented to the court and plaintiffs the existence of critical documents that provided evidence that was favorable to plaintiffs' case and evidence that Ford knew, or should have known, would harm their defense; (3) Ford surreptitiously collected and destroyed critical documents and misrepresented the legitimacy of that collection and destruction process to the court; and (4) Ford concealed the fact that they knew the Bronco II was unsafe before they allowed it to be sold to the American public.

Plaintiffs allege that their counsel recently discovered Ford's unlawful conduct in the process of due diligence for the preparation of a new Bronco II case. They point to five pieces of evidence which they allege Ford, its attorneys, and Bickerstaff hid during Denny I: (1) a letter from Bickerstaff to Ford detailing his retention rate of $5,000 per day to "assist you [Ford] in preparing myself, in Ford's favor," which the Dennys contend shows Bickerstaff was paid to give misleading testimony, Pls.' Am. Compl., Ex. A, ECF No. 15–1 ("Bickerstaff Letter"); (2) a vehi-

cle design and testing memo from one of Ford's departments to the Arizona Proving Ground (where Ford attempted to test drive the Bronco II) prepared for release of the Ford Explorer, which plaintiffs contend acknowledges the Bronco II's problems with jacking, stability, and design, and could have been used to attack Ford's defense and support plaintiffs' expert's testimony ("Vehicle Design and Testing Memo"); (3) Ford's surreptitious method of collecting Bronco II-related documents, many of which were destroyed, which was unprecedented by the company; (4) Ford's own statistics showing that the Bronco II was experiencing jacking at ten times the rate of the Chevrolet Blazer; and (5) that the Bronco II ceased to be tested on the track by professional drivers, not because Ford developed a computer program which eliminated the need to do so—as they argued in Denny I—but because the vehicles were unsafe even for professional drivers.

In the amended complaint, the Dennys allege nine causes of action: fraud (*First* Cause of Action); intentional non-disclosure of a material fact (*Second* Cause of Action); fraud on the court (*Third* Cause of Action); fraudulent non-disclosure of a material fact (*Fourth* Cause of Action); civil conspiracy (*Fifth* Cause of Action); spoliation of evidence (*Sixth* Cause of Action); violations of RICO (*Seventh* Cause of Action); conspiracy to violate RICO (*Eighth* Cause of Action); and punitive damages (*Ninth* Cause of Action). In their opposition to Ford's motion, plaintiffs withdrew their claims of intentional non-disclosure of a material fact (Second Cause of Action) and spoliation of evidence (*Sixth* Cause of Action). Pls.' Mem. Opp'n Summ. J. 18, 23 ("Pls.' Mem.").

## III. *STANDARD OF REVIEW*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). All reasonable inferences must be drawn in favor of the complainant. *See Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir.2010) (citing *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. Instead, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. at 1950.

## IV. *DISCUSSION*

### A. *Fraud on the Court—Third Cause of Action*

An analysis of plaintiffs' claims cannot proceed without first addressing the question of whether the Denny I judgment is still valid. Plaintiffs are essentially claiming that the Denny I judgment is invalid and request that this judgment be set aside for fraud on the court pursuant to Rule 60(d)(3). "'[F]raud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir. 1988). Fraud on the court is exclusively confined to "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir.1995) (internal quotation marks omitted).

Examples of conduct that reach this high standard. include "bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing the judge." *United States v. Bennett,* No. S197CR639, 2004 WL 736928, at *2 (S.D.N.Y. Apr. 5, 2004). "After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of 'fraud upon the court.'" *Gleason,* 860 F.2d at 559; *see also Chamberlain v. Univ. of Rochester, Ret. Plan Comm.,* No. 01–CV–6090, 2004 WL 1574540, at *7 (W.D.N.Y. May 26, 2004) (holding that evidence of fraudulent witness statements do not support a finding of fraud on the court). Moreover, "allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action." *Gleason,* 860 F.2d at 559.

Plaintiffs allege that Bickerstaff perjured himself and that Ford failed to disclose documents during discovery. Am. Compl. ¶¶ 37, 51. Such conduct, however, does not establish the "requisite interference with the judicial machinery" to constitute a claim for fraud on the court. *Gleason,* 860 F.2d at 560. Although witness perjury and concealment of responsive documents would hardly merit praise, "even fairly despicable conduct will not qualify as fraud on the court." 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.21[4][c] (3d ed. 2004). Plaintiffs contend that Ford led an "orchestrated effort" with its attorneys to thwart the "normal process of adjudication." Pls.' Mem. 19. This blanket assertion, however, does not change the fact that plaintiffs have only alleged perjury and non-disclosure of documents. Indeed, "neither perjury nor nondisclosure ... amounts to anything more than fraud involving injury to a single litigant." *Gleason,* 860 F.2d at 560.

Accordingly, plaintiffs have failed to state a claim for fraud on the court, and the judgment from Denny I stands. Therefore, plaintiffs' third cause of action will be dismissed.

## B. *Res Judicata*

Ford argues that plaintiffs' claims are barred by res judicata. Res judicata challenges "may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. Cnty. of Franklin,* 15 F.3d 245, 253 (2d Cir.1994). Under both New York and federal law, the doctrine of res judicata, or claim preclusion, prevents the relitigation of "issues that were or could have been raised" in the first action when there was a "final judgment on the merits." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 600 F.3d 190, 195–96 (2d Cir.2010) (internal quotation marks omitted). Res judicata bars "successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *In re People v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 122, 863 N.Y.S.2d 615, 894 N.E.2d 1, 12 (2008) (internal quotation marks and citations omitted). "A claim is part of the same transaction as another claim if they stem from the same factual grouping, even if the claims involve materially different elements of proof, and even if the claims would call for different measures of liability or different kinds of relief." *RA Global Servs., Inc. v. Avicenna Overseas Corp.,* 843 F.Supp.2d 386, 389 (S.D.N.Y.2012) (internal quotation marks omitted). Thus, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the

earlier suit." *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) (internal quotation marks omitted).

Ford contends that the elements of res judicata are satisfied, since plaintiffs received a final judgment on the merits in Denny I, and the parties are identical. It argues that plaintiffs are merely seeking to enlarge their winning jury verdict by obtaining punitive damages and reducing the percentage for which Nancy Denny was found comparatively negligent. Moreover, defendant asserts that all plaintiffs' claims here are inextricably linked to the merits of their underlying products liability action in Denny I.

Plaintiffs argue the basis of the amended complaint stems from Ford's actions during Denny I, not from the defective Bronco II. Plaintiffs point to the three causes of action that were decided by the jury: breach of implied warranty, strict products liability, and negligence. Accordingly, they contend that it was impossible to litigate issues of defendant's fraudulent conduct during Denny I because Ford made every effort to conceal this conduct. The Dennys argue that their requested punitive damages and reduced comparative fault are a measure of damages for Ford's fraud during Denny I, not from the underlying allegedly defective design.

 Plaintiffs are ultimately unable to separate their current claims sounding in fraud, specifically the first and fourth causes of action, from the claims extensively litigated in Denny I. This is most apparent in their treatment of the Bickerstaff letter, which they claim provides evidence that Bickerstaff was paid by Ford to give misleading testimony "in Ford's favor." Am. Compl. ¶ 18. The Dennys allege that, had defendant produced this letter in Denny I, they "could have cross-examined Bickerstaff, and rendered his testimony useless for Ford." *Id.* Bickerstaff, however-

er, was extensively cross-examined by plaintiffs' counsel in Denny I regarding his retention by Ford, his compensation rate, and the statistical comparison of the Bronco II's jacking and rollover rate, noting the Bronco II's extremely poor rollover performance. Def.'s Reply Mem., Ex. A, ECF No. 24–1, 170:22–171:3 (Denny I Trial Tr.). Plaintiffs had an opportunity to, and did, reveal Bickerstaff's bias to the jury in litigating their breach of implied warranty, strict products liability, and negligence claims. Allowing plaintiffs' claims for fraud and fraudulent non-disclosure to proceed would provide them with a second bite at the apple on a different theory of recovery.

Moreover, the jury verdict the Dennys received "is binding in all subsequent litigation between the same parties on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not." *N. Assur. Co. of Am. v. Square D Co.,* 201 F.3d 84, 87 (2d Cir. 2000). The Dennys wish to set aside this binding judgment by contesting Bickerstaff's credibility and Ford's discovery tactics—issues which were, and certainly could have been, litigated in Denny I. Am. Compl. ¶ 23. By alleging that Ford's conduct during Denny I resulted in the reduction of their damages, plaintiffs are sidestepping the issue of res judicata, which "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (internal quotation marks omitted). The doctrine of res judicata dictates the dismissal of plaintiffs' claims sounding in fraud.

Therefore, plaintiffs' first and fourth causes of action will be dismissed on res judicata grounds.

### C. *Collateral Estoppel*

■ Ford also contends that, even if plaintiffs' claims are not precluded by res judicata, they are still barred under the doctrine of collateral estoppel. "[I]t is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion." *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F.Supp.2d 463, 470 (S.D.N.Y.2009) (internal quotation marks omitted). The doctrine of collateral estoppel, or issue preclusion, prevents parties from relitigating "an issue of fact or law that was clearly raised in a prior action where the party to be precluded . . . had a full and fair opportunity to litigate the issue, and a decision was necessary to support a valid and final judgment on the merits." *Envtl. Def. v. U.S. Envtl. Prot. Agency*, 369 F.3d 193, 202 (2d Cir.2004) (citation omitted). Under New York law, collateral estoppel bars relitigation of an issue when: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir.2006). Intended to conserve judicial resources and prevent vexatious litigation, the doctrine of collateral estoppel is "based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63, 67 (1985).

■ Ford argues that plaintiffs are attempting to use the Bickerstaff Letter and the Vehicle Design and Testing Memo to show that the Bronco II was defectively designed, in an attempt to now obtain punitive damages and invalidate the finding of Nancy Denny's comparative negligence. According to defendant, the issues of Nan-cy Denny's comparative negligence and Ford's liability for punitive damages were actually litigated in Denny I. Ford relies on *Robinson v. Volkswagenwerk AG*, where the plaintiffs also lost their underlying products liability action against an automobile manufacturer and subsequently brought an action alleging common law fraud and fraud on the court based on alleged misrepresentations by the manufacturer and its attorney in the underlying trial. 56 F.3d 1268, 1271–72 (10th Cir. 1995).

Similar to the Dennys, the plaintiffs in *Robinson* claimed that they were not attempting to have the initial judgment set aside, but instead sought to recover damages "said to be caused by the defendants' fraud in the course of obtaining that judgment." *Id.* at 1272. The jury in the prior trial, however, had necessarily found at least one of the following facts: (1) that no defect existed in the manufacturer's fuel tank; (2) that the alleged defect did not make the manufacturer's product unreasonably dangerous; or (3) that the alleged defect in the manufacturer's product did not cause the plaintiffs' injuries. *Id.* at 1273. The Tenth Circuit reasoned that the plaintiffs' claims for damages "would require plaintiffs to show that, but for the alleged fraud leading to the exclusion of the [allegedly withheld] documents, the jury would have found in the plaintiffs' favor." *Id.* To make that showing, however, the plaintiffs would necessarily have to establish that manufacturer's fuel tank was: (1) defective, (2) unreasonably dangerous, and (3) the cause of the plaintiffs' injuries in the prior action. *Id.* Because such a finding would be inconsistent with the prior jury verdict, the court concluded that "the previous judgment operates as a bar to the damages claimed by plaintiffs." *Id.*

The facts of the case at hand are strikingly similar to *Robinson.* The Dennys already had an opportunity to litigate Ford's liability with respect to the design of the Bronco II. Although plaintiffs prevailed on their breach of implied warranty claim in Denny I, the jury's verdict form establishes the following facts: (1) Ford was negligent in designing, testing, and marketing the Bronco II, but that negligence was not the proximate cause of Nancy Denny's injuries; (2) Ford was not negligent with regard to providing warnings with respect to the Bronco II; (3) the Bronco II was not defective; (4) Nancy Denny's negligence was a proximate cause of her injuries, and she was sixty percent at fault; and (5) Ford did not commit willful or wanton acts justifying an award of punitive damages. *Denny v. Ford Motor Co.,* 42 F.3d 106, 109 n. 1 (2d Cir.1994) (setting out the jury verdict form and responses in Denny I).

Plaintiffs rely on *Goff v. Ford Motor Company,* where the plaintiff sued Ford with similar allegations of fraud after settling with Ford four years earlier regarding injuries sustained in a Bronco II rollover. Scarzafava Aff., Ex. A, ECF No. 21–4, 1–2. The initial action in *Goff,* however, resulted in a settlement, and not a jury trial on the merits, and is therefore distinguishable from the instant matter. *Id.* 2, 4–5. The Dennys also insist that they do not seek to relitigate design, but rather Ford's conduct in defending Denny I. Yet the damages plaintiffs request for their fraud, conspiracy, and RICO claims (the First, Fourth, Fifth, Seventh, and Eighth Causes of Action) would necessarily require both relitigation and reversal of the final judgment in Denny I.

Plaintiffs further allege that Nancy Denny was deprived of "full and fair payment" for both compensatory and punitive damages because of Ford's conduct in Denny I. Am. Compl. ¶¶ 10, 12, 75. In order to determine any additional damages for which plaintiffs might be eligible under their fraud, conspiracy, and RICO theories, however, the parties would be forced to relitigate the issues of Ford's liability under plaintiffs' original strict products liability and negligence claims, and Nancy Denny's comparative negligence, all in light of plaintiffs' allegedly "new evidence." Pls.' Mem. 9. Indeed, these new claims "are based upon assertions of fact that are inconsistent with the facts supporting the prior judgment." *Robinson,* 56 F.3d at 1273.

Plaintiffs also contend that they "know ... that the jury would have awarded punitive damages" because of punitive damage awards in two similar cases: $58 million in *Ford Motor Company v. Ammerman,* 705 N.E.2d 539, 561 (Ind.Ct.App. 1999), and $22.5 million in *Ford Motor Company v. Cammack,* 999 S.W.2d 1, 4 (Tex.App.1998). Although plaintiffs may not have received the jury awards seen in the *Ammerman* and *Cammack* cases, by no means did they come home from Denny I empty-handed. Indeed, after a jury trial, where Nancy Denny and Ford's respective liabilities for her injuries were extensively litigated, plaintiffs prevailed on their breach of implied warranty claim and were awarded $1.2 million in compensatory damages. Allowing plaintiffs' claims to now proceed would significantly undermine the policies in favor of collateral estoppel: reliance on prior adjudication, the prevention of inconsistent decisions, and discouraging costly and vexatious litigation. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

Plaintiffs' claims of fraud, fraudulent non-disclosure, civil conspiracy, and violations of RICO would necessitate an extensive relitigation of the issues decided in Denny I and are accordingly barred under the doctrine of collateral estoppel. Thus,

even though the first and fourth causes of action are precluded by res judicata, they will additionally be dismissed on collateral estoppel grounds. Further, plaintiffs' fifth, seventh, and eighth causes of action will also be dismissed under the doctrine of collateral estoppel.

### D. *Statute of Limitations*

■ Ford further contends that, even if plaintiffs were not precluded from litigating their remaining causes of action on res judicata and collateral estoppel grounds, their claims are nonetheless untimely. "[A] complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir.2003) (internal quotation marks omitted); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

### 1. *Fraud—First Cause of Action*

■ Under New York law, the statute of limitations for a fraud claim is "the longer of either six years from when the cause of action accrued or two years from the time plaintiff discovered the fraud or could have with reasonable diligence discovered it." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 973 (2d Cir.1992). In determining when the fraud was or should have been discovered, New York courts apply an objective test. *Id.* at 973. When a plaintiff "shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Id.* (internal quotation marks omitted).

Ford argues plaintiffs' fraud claim accrued, if at all, during the Denny I trial,

with March 19, 1996, the day on which the Second Circuit issued its mandate affirming the jury verdict, as the latest possible date. *See Denny*, 79 F.3d at 13. Defendant also contends that, even applying the more generous discovery rule, both the Bickerstaff Letter and Vehicle Design and Testing Memo became public knowledge in the 1995 *Cammack* case. Because the appeal to the Second Circuit in Denny I was still pending at the time of the *Cammack* decision, plaintiffs had a duty to inquire as to facts that could affect their case, and could have accordingly filed a motion for relief from the judgment pursuant to Rule 60(b) in 1995.

Plaintiffs contend there was "simply no way" they could have known about the *Cammack* decision. Pls.' Mem. 11. Furthermore, they suggest that the only way in which they could have discovered Ford's conduct would involve going "to the considerable expense of purchasing a Westlaw account and spending every waking hour vigorously searching for evidence of Ford's fraud." *Id.* 11, n. 2. At the time of Denny I, however, nearly identical litigation surrounding the Ford Bronco II crowded hundreds of the nation's dockets. As of 1995, Ford had already paid over $113 million to settle 334 personal injury suits involving the Bronco II. *See* "Ford Told to Pay $25 Million for Rollover," *N.Y. Times*, June 13, 1995, *available at* http://www.nytimes.com/1995/06/23/us/ford–told–to–pay–25–million–for–rollover.html. Indeed, the *Cammack* decision was not confined to Westlaw, but was heavily reported in major news outlets before the Second Circuit issued its mandate in Denny I. *Id.; see also* Mike Drago, "Jury Awards $22.5 Million in Punitive Damages in Ford Bronco II Case," *Associated Press*, June 23, 1995, *available at* http://www.apnewsarchive.com/1995/Jury–Awards–$22–5–Million–In–Punitive–Damages–in–Ford–Bronco–II–Case/id–9098336d9d8abea60096351094b47944.

Plaintiffs could have discovered the *Cammack* decision. The overwhelming presence of comparable Bronco II litigation throughout the country, significant coverage in the mainstream media, and the Dennys' similar allegations of corporate misconduct and discovery abuses in Denny I would thus "suggest to a person of ordinary intelligence the probability that he has been defrauded." *Cruden*, 957 F.2d at 973. Thus, plaintiffs' fraud claim accrued in 1996, and the statute of limitations ran in 2002. Accordingly, their first cause of action is barred by the statute of limitations.

Therefore, even though the doctrines of res judicata and collateral estoppel preclude plaintiffs' fraud claim, their first cause of action will also be dismissed as untimely.

#### 2. *Fraudulent Non–Disclosure of a Material Fact—Fourth Cause of Action*

■ To establish fraudulent concealment under New York law, a plaintiff must prove not only all of the elements of a common law fraud claim, but also establish that the defendant had a duty to disclose the material information. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir.1993). Because plaintiffs' fraud claim is time-barred as a matter of law, their fraudulent concealment claim has similarly outrun the statute of limitations. *See Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 150 (2d Cir.1995) (noting that fraudulent concealment is a species of common law fraud).

Therefore, even though plaintiffs' fourth cause of action is barred by res judicata and collateral estoppel, it will also be dismissed on statute of limitations grounds.

#### 3. *Civil Conspiracy—Fifth Cause of Action*

■ Under New York law, "a claim for civil conspiracy may stand only if it is connected to a separate underlying tort." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 119 (S.D.N.Y.2009); *see also Snyder v. Puente De Brooklyn Realty Corp.*, 297 A.D.2d 432, 435, 746 N.Y.S.2d 517 (N.Y.App.Div. 3d Dep't 2002) ("[C]onspiracy to commit a tort such as fraud is not an independent cause of action...."). Because plaintiffs' underlying fraud claim will be dismissed, their claim for civil conspiracy cannot survive. *See Meisel*, 651 F.Supp.2d at 119.

Therefore, in addition to the fifth cause of action's dismissal on collateral estoppel grounds, it will also be dismissed as untimely.

#### 4. *Violations of RICO—Seventh Cause of Action*

■ RICO claims are subject to a four-year statute of limitations period. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir.2012). The clock begins not when a plaintiff discovers the pattern of predicate acts, but "when a plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 1079–80, 145 L.Ed.2d 1047 (2000); *Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Tech., Inc.*, 420 F.Supp.2d 253, 264 (S.D.N.Y.2006) (following the injury discovery accrual rule).

Ford contends that the latest possible date when plaintiffs' RICO claims could have accrued is March 19, 1996, when the Second Circuit issued its mandate affirming the jury verdict in Denny I. Plaintiffs assert that the statute of limitations did not begin to run until January 2011, when their counsel contacted them, after learning of Ford's fraud in preparation of a separate Bronco II rollover case. Indeed, plaintiffs allege that it was "solely through

274

a combination of the greatest degree of diligence and fortuitous circumstances" that they were able to discover Ford's "illegal activities." Am. Compl. ¶ 108. The plaintiffs in *Goff*, however, similarly alleged that it was "solely through a combination of the greatest degree of diligence and fortuitous circumstances" that they were able to discover Ford's "illegal activities." Scarzafava Aff., Ex. A, ECF No. 21–6, ¶ 151.

Although both the Dennys and the plaintiffs in *Goff* insist that only the highest level of diligence would have revealed Ford's fraudulent activity, the plaintiffs in *Goff* were able to discover Ford's alleged conduct over ten years earlier. Plaintiffs rely not only upon *Goff*, but also *Cammack* and *Ammerman*, both of which were decided before 2000. Am. Compl. ¶ 22. Thus, plaintiffs essentially contend that, even though *Cammack* was decided before the Second Circuit issued its mandate for Denny I in 1996, neither they nor their counsel should have been on notice of Ford's alleged conduct until over fifteen years later. Allowing plaintiffs to ignore similar Bronco II litigation clearly relevant to their case for nearly twenty years "would undercut every single policy" considered by the Supreme Court in evaluating the injury discovery accrual rule. *Rotella*, 528 U.S. at 558, 120 S.Ct. at 1082. Rewarding plaintiffs with such an expansive limitations period "would bar repose, prove a godsend to stale claims, and doom any hope of certainty in identifying potential liability." *Id.* at 559, 120 S.Ct. at 1083.

The statute of limitations for plaintiffs' RICO claims began to run in 1996, at the time the Denny I mandate was issued.

Because the Dennys waited until 2011 to commence this suit, well beyond the four-year statute of limitations period, their RICO claims are untimely. Therefore, even though their seventh cause of action is barred under the doctrine of collateral estoppel, it will also be dismissed on statute of limitations grounds.

### 5. *Conspiracy to Violate RICO— Eighth Cause of Action*

Because plaintiffs' substantive RICO claims are untimely, their conspiracy to violate RICO claim must fail as a matter of law. *Nat'l Grp. for Commc'ns*, 420 F.Supp.2d at 264 (noting that, in the Second Circuit, a cause of action under 18 U.S.C. § 1962(d) should be dismissed where the underlying RICO claim is deficient).

Even if plaintiffs' substantive RICO claims were not time-barred, however, they have provided nothing more than conclusory allegations regarding the agreement of Ford, its attorneys, and Bickerstaff to commit predicate acts in violation of RICO. Plaintiffs have merely asserted that Ford "conspired to violate 18 U.S.C. § 1962(c)" and "violated 18 U.S.C. § 1962(d)." Am. Compl. ¶ 113. Nowhere in the forty-four page amended complaint do plaintiffs specify the members of the conspiracy or set forth sufficient facts to show how Ford and its alleged co-conspirators "through words or actions, reached an agreement." *Nat'l Grp. for Commc'ns*, 420 F.Supp.2d at 272. Instead, the Dennys insist that because Ford's "conduct" was found to be a conspiracy in *Goff*, any remotely similar "conduct" therefore qualifies as a conspiracy in this case.[1] Am.

1. As another federal court has acknowledged, the *Goff* Court did not find that there was a conspiracy, but rather made a limited evidentiary ruling under Federal Rule of Evidence 104 that "by a preponderance of the evidence ... there was enough under the hearsay rule to allow the statements to be used as co-conspirator statements and thereby avoid the trap of hearsay." Def.'s Mem., Ex. E, ECF No. 20–5, 47:5–13 (*Thomas v. Ford Motor Co.* Final Pretrial Conference Tr.). Indeed, "there has never been any kind of a finding by any court that Mr. Bickerstaff's testimony was fraudulent or perjurious." *Id.* 56:1–3.

Compl. ¶¶ 10, 27. Plaintiffs sparingly use the word "conspiracy" in the amended complaint but never identify the means by which Ford conspired to violate 18 U.S.C. § 1962(d). Am. Compl. ¶¶ 15, 36, 48, 51. These "[c]onclusory allegations of a conspiracy are insufficient to plead a Section 1962(d) claim." *Black Radio Network v. Nynex Corp.*, 44 F.Supp.2d 565, 581 (S.D.N.Y.1999).

Therefore, in addition to the eighth cause of action's preclusion under the doctrine of collateral estoppel, it will also be dismissed as untimely and lacking enough factual content to state a claim.

### E. *Punitive Damages—Ninth Cause of Action*

Under New York law, "a demand for punitive damages does not amount to a separate cause of action for pleading purposes." *Mahar v. U.S. Xpress Enterprises, Inc.*, 688 F.Supp.2d 95, 111 (N.D.N.Y.2010) (Sharpe, J.) (internal quotation marks omitted). Indeed, plaintiffs' separate demand for punitive damages here "possesses no viability absent its attachment to a substantive cause of action." *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 612, 612 N.Y.S.2d 339, 634 N.E.2d 940, 945 (1994). Because plaintiffs' substantive claims will be dismissed, there is no underlying cause of action in which plaintiffs' punitive damages claim are grounded. *See Abbatiello v. Monsanto Co.*, 522 F.Supp.2d 524, 543 (S.D.N.Y. 2007).

Therefore, plaintiffs' ninth cause of action will be dismissed.

## V. *CONCLUSION*

Plaintiffs have failed to state a claim for fraud on the court (*Third* Cause of Action) pursuant to Rule 60(d)(3). Thus, not only will their claim for fraud on the court be dismissed, but the final judgment from Denny I remains valid. Plaintiffs' claims for fraud (*First* Cause of Action) and fraudulent non-disclosure of a material fact (*Fourth* Cause of Action) are grounded in the underlying claims litigated in Denny I and will be dismissed on res judicata grounds. The first and fourth causes of action would also necessitate relitigation of the issues decided in Denny I and are accordingly barred under the doctrine of collateral estoppel. Moreover, plaintiffs' claims of civil conspiracy (*Fifth* Cause of Action), violations of RICO (*Seventh* Cause of Action), and conspiracy to violate RICO (*Eighth* Cause of Action) would additionally involve relitigation of the issues in Denny I and will therefore be dismissed on collateral estoppel grounds. Furthermore, the first, fourth, fifth, seventh, and eighth causes of action are untimely because they were not brought within the applicable statutes of limitations. Lastly, plaintiffs' claim for punitive damages (*Ninth* Cause of Action) will be dismissed because it is not grounded in a substantive cause of action. As previously noted, plaintiffs have withdrawn the *Second* and *Sixth* Causes of Action.

Therefore, it is

ORDERED that

1. Defendant Ford Motor Company's motion to dismiss plaintiffs Nancy and Robert Denny's amended complaint is GRANTED;

2. The amended complaint is DISMISSED in its entirety; and

3. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.